**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION,**

**WILLIE HARRISON,**

    **Plaintiff,**

vs.                                                     **CASE NO. 4:22-CV-00366-AW-MAF**

**RICKY D. DIXON, SEC'Y
FLA. DEP'T OF CORR.,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff, Willie Harrison, an inmate proceeding *pro se* and *in forma pauperis*, sued Ricky Dixon, Secretary of the Florida Department of Corrections (FDOC), in this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Defendant filed a motion to dismiss with exhibits maintaining that Harrison failed to exhaust his administrative remedies. ECF No. 23. Harrison filed a response with additional exhibits. ECF No. 30. After careful review, for the reasons stated below, the undersigned recommends that Defendant's motion to dismiss be granted and that the case be dismissed.

    I.    **Harrison's Complaint, ECF No. 1.**

Harrison sued the FDOC secretary solely in his official capacity alleging violations of his rights under the Religious Land Use and

Institutionalized Persons Act (RLUIPA). ECF No. 1, pp. 2, 11. Harrison has been a practicing Messianic Jew since 2011 and regularly received Messianic literature from authorized religious vendors. Id., p. 5. The literature includes certain doctrinal delineations which provide guidance on the exercise of the religious tenets. Id. The exercise of the faith includes personal prayer, messianic prayer services, spiritual ceremonies, fasting, and holy days much of which is conducted in the Synagogue building within the prison. Id., p. 6. Prison policy provides for Messianic Synagogue services, Messianic ceremonies, meal fasting accommodations, and permits the honoring of Messianic holy days. Id., pp. 5-6. From 2011 until June 23, 2022, prison officials allowed Harrison to freely practice his faith without incident. Id., p. 6.

On April 11, 2022, Harrison received an email from a "J-Pay representative" notifying him of a change in mail policy -- "all tangible non-legal and non-privileged mail" would be digitized, transmitted to inmate J-Pay accounts, and would only be available at a cost of $.25 per page. Id., pp. 6-7. Harrison maintains the policy change is problematic for two reasons. First, the policy, effectively, eliminates the availability of tangible religious text. Second, Harrison is required to pay for his religious materials when religious vendors sent them to him free of charge. Id., p. 7. Harrison maintains this creates a substantial burden on his ability to freely exercise the tenets of his

faith. Id. Harrison is, approximately, 82 years old, uses a walking device to ambulate, and is indigent. Id., p. 10.

The new policy was implemented on June 23, 2022. Id., p. 8. Four days later, on June 27, Harrison received a notice through his J-Pay account that his "Messianic scriptural literature from the *bona fide* religious organization Hebrew Roots" was "confiscated and blocked." Id. The notices are accessed through a prison kiosk machine located in the television room of the housing unit. Id. The large, metal kiosk machine is bolted to a concrete wall and cannot be detached or relocated by inmates. Id. Through the kiosk machine, inmates send and receive emails and receive their digitized mail. Id. Essentially, Harrison argues that the prison intercepts his free religious mail in tangible format and sells it back to him for a profit in violation of RLUIPA.

Harrison claims that on July 18, 2022; August 2, 2022; and August 29, 2022, he filed "notices" informing the prison that the new policy substantially interfered with his ability to freely practice his faith. Id., pp. 9-11. Harrison seeks a permanent injunction enjoining FDOC from further interception with free and tangible religious mail, to refrain from digitizing religious mail, to refrain from selling the religious mail at a cost of $.25 per page, and from interfering with Harrison's free exercise of his sincerely held religious beliefs. Alternatively, religious mail should be exempt from the new policy. Id.

## II. Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863, 868 (11th Cir. 2010). There is no discretion to waive this requirement. Bryant v. Rich, 530 F.3d 1368, 1373 (11th Cir. 2008). The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81, 90 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. Porter, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in

abatement." Bryant, 530 F.3d at 1374 (quoting Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)). Such a defense is treated "like a defense for lack of jurisdiction," although it is not a jurisdictional matter. Id. at 1374. It is "not generally an adjudication on the merits." Id.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their

Case 4:22-cv-00366-AW-MAF   Document 31   Filed 07/24/23   Page 7 of 18

Page 7 of 18

complaints."); see also Turner, 541 F.3d at 1082-83.

Nonetheless, "[a] remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose. Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes, and so are not available." Turner, 541 F.3d at 1084 (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). "Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016).

## III. Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 23.

Defendant argues that the case should be dismissed because Harrison did not exhaust all his administrative remedies prior to filing the instant lawsuit. ECF No. 23. Defendant maintains that Harrison submitted informal grievances (Exh's A-C), a formal grievance (Exh. D), and an administrative appeal (Exh. E). Id., p. 2. However, when the administrative appeal was returned without action, Harrison took no additional steps and did not file a Petition to Initiate Rulemaking (PIRM) relating to the challenged rule (Exh. F). Id.

## IV.    Harrison's Response, ECF No. 30.

Harrison argues there are certain pleading errors in Defendant's motion to dismiss. ECF No. 30. Harrison points out there are no numbered paragraphs in Defendant's motion as required by Fed. R. Civ. P. 10; however, because that requirement applies to the presentation of claims in a complaint or in defenses presented in an answer, there is no error. Numbered paragraphs are not required in a motion to dismiss.

Harrison maintains he is not challenging any prison rule; so, there is no need to file a PIRM. ECF No. 30, pp. 3, 11-14. Harrison maintains that Defendant's exhibits prove he gave Defendant a full[] and fair opportunity to address" his complaints. Id., p. 3. Harrison argues that Defendant does not acknowledge his RLUIPA claim and focuses on the First Amendment claim. Id., p. 4. Harrison seems to posit that the way to determine whether his grievances properly exhaust each step of the process is by decoding his own notations; he had his own property registration system. Id., pp. 4-6. Harrison claims he has a property right to pursue a court remedy. Id., p. 8.

The question here is not whether Harrison gave Defendant's opportunity to address his complaints -- it is whether Harrison fully exhausted his administrative remedies. Ultimately, at a minimum, Harrison is required to follow the three-step process of the FDOC grievance procedure.

## V. Discussion

### A. FDOC Grievance Procedures

Before addressing the parties' arguments, the Court outlines the FDOC grievance procedure. The FDOC provides a three-step grievance procedure: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004); Fla. Admin. Code § 33-103.005-103.007. Informal grievances must be received by the designated prison official within twenty calendar days of the incident date. Fla. Admin. Code § 33-103.011(1)(a). To appeal the denial of an informal grievance, the prisoner must file a formal grievance within fifteen calendar days and attach the contested informal grievance. Id., §§ 33-103.006(1)(a) & (g) and 33-103.011(1)(b)(1). To appeal the denial of a *formal* grievance (whether filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within fifteen calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Id., §§ 33-103.007(1) & (5) and 33-103.011(1)(c).

If a grievance appeal is approved for further investigation and the inmate is issued a corrected formal grievance response, an inmate has not

exhausted all of his available administrative remedies at that point. Specifically, "[i]f the grievance is returned to the institution or facility, or privatization commission for further investigation or response, the inmate may, following receipt of that response, re-file with the Office for the Secretary pursuant to Rule 33-103.007, F.A.C., if he is not satisfied with the response." Fla. Admin. Code 33-103.007. An inmate has an additional exhaustion opportunity where he may re-file an appeal of that amended response to the Secretary if he is unsatisfied with that new response and needs to do so to fully exhaust his available administrative remedies prior to initiating a lawsuit. See Fla. Admin Code 33-103.007(7).

Inmates must comply with the grievance procedure in order to satisfy the exhaustion requirement. Untimely and procedurally defective grievances do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 90-96; Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005).

B. Harrison Failed to Exhaust the Internal Grievance Process

Harrison's challenges to being charged to access his mailed religious materials can be narrowed down into two attempts to complete the grievance process – the first initiated on July 4, 2022, and the second initiated on July 18, 2022. Unfortunately, as outlined below, neither of Harrison's attempts completed the full three-step process.

*1. First Grievance Attempt - July 4, 2022, No. 501-2207-0016*

On July 4, 2022, Harrison filed an informal grievance about the fees imposed by J-Pay to access religious materials, otherwise mailed free of charge, as violating his right to freely exercise his religious beliefs (No. 501-2207-0016). ECF No. 23-1, p. 2[1] (Defendant's Exh. A). The grievance was denied on July 11, 2022, because the mailing had stamps, which is not allowed under the regulations. Id. This completed the first step.

On August 5, 2022, Harrison filed a formal grievance to the warden (No. 2208-501-033). ECF No. 23-4, pp. 4-5 (Defendant's Exh. D).[2] Harrison complained that his informal grievance was not returned within 15 days and was not addressed or denied but Harrison did not say whether it related to the July 4th or July 18th grievance and did not reference any attachments. Id., p. 4. Harrison reiterated his claims about the fees for religious mail. Id., pp. 4-5. On August 17, 2022, the prison interpreted Harrison's formal grievance as related to the July 4th grievance and issued a memo in response. Id., p. 3. Specifically, the memo explained that the prison received Harrison's July 4th grievance and responded to it on July 11th; the memo

---

[1] Duplicate exhibit at ECF No. 23-5, p. 7.

[2] Duplicate exhibit at ECF No. 23-5, pp. 5-6.

Case No. 4:22-CV-00366-AW-MAF

also reiterated the policy prohibiting stickers or stamps. Id., p. 3. In addition to the memo, the prison issued a formal response on August 18, 2022, articulating the same; thus, the prison denied the formal grievance.[3] Id., p. 2. Accordingly, Harrison completed the first two steps of the prison grievance procedure for the July 4th grievance. Harrison had fifteen days to file an administrative appeal – by September 2, 2022. See Fla. Admin. Code §§ 33-103.007(1) & (5) and 33-103.011(1)(c). He did not do so.

   2. *Second Grievance Attempt – July 18, 2022, No. 501-2207-0126).*

Harrison complicated the process for himself by pursuing a parallel grievance rather than fully completing the three-step process for the July 4th grievance. Before step two could be completed for the July 4th grievance, Harrison raised the same issue in a second informal grievance on July 18, 2022 (No. 501-2207-0126). ECF No. 23-2, p. 2 (Defendant's Exh. B). Again, Harrison complained about the fee to access his religious publications. Id. The prison stamped it as "received" on July 23. Id. On July 25, Harrison filed an informal grievance because he did not receive a log number for his July 18th grievance. ECF No. 30, p. 19 (Plaintiff's Exh. A). The next day, the prison responded that log numbers are not provided until a grievance is returned to the inmate. Id.

---

[3] Duplicate exhibit at ECF No. 23-5, p. 4.

Case No. 4:22-CV-00366-AW-MAF

On August 9, 2022, the prison denied the July 18th grievance (No. 501-2207-0016): "The mailroom has not intercepted your mail . . . All mail [from that address] will be scanned and viewable on the kiosk." ECF No. 23-2, p. 2 (Defendant's Exh. B). Defendant concedes that Harrison completed the first step of the grievance process. ECF Nos. 23, p. 9. But Harrison did not move onto step two to file a formal grievance to the warden relating to the July 18th grievance. Instead, as explained in the next section, Harrison filed a formal grievance (again) not relating to any specific underlying informal grievance, several more informal grievances, and an administrative appeal for the July 18th grievance skipping step two entirely.

3. *Harrison's other grievances do not complete the 3-step process for the July 4th grievance or the July 18th grievance.*

On August 2, 2022, Harrison filed a formal grievance to the warden; the one filed on August 5, 2022, was nearly identical. ECF No. 30, p. 23 (Plaintiff's Exh. B.). Harrison claimed that the prison did not respond within fifteen days and that the merits of his grievances were not addressed or denied. Id. He reiterated his complaints about fees for religious mail; **however**, this formal grievance did not indicate whether it addressed the July 4th or July 18th grievance. Id. Interestingly, this formal grievance is not stamped as received; so, there is no way for the Court to know whether Harrison ever submitted it the prison. Id. Still, it is up to Harrison to be clear

in writing his grievances, and for the purposes of determining exhaustion, that a formal grievance addresses a particular informal grievance. Ordinarily, a formal grievance would satisfy step two of the process. Three days later, as explained above, Harrison satisfied step two of the grievance process for July 4th grievance. ECF No. 23-4, pp. 4-5 (Defendant's Exh. D). However, the Court will not make a leap in judgment and simply assume that Harrison's August 2nd formal grievance applies to his July 18th grievance when he made no such indication within it.

In the following days, Harrison filed more informal grievances. On August 10, 2022 (No. 501-2208-0124), Harrison complained the prison's response to his July 18th grievance was untimely; it was, eventually, denied on August 25, 2022. ECF No. 30, p. 20 (Plaintiff's Exh. A). On August 15, 2022 (501-2208-0148), Harrison complained that he did not receive a receipt for his August 2nd grievance. ECF No. 30, p. 24 (Plaintiff's Exh. B). On August 22, 2022 (No. 501-2208-0217), Harrison filed an informal grievance about log numbers again for his July 18th grievance and the failure to respond within the required timeframe; the prison denied it on September 7, 2022. ECF No. 30, p. 21 (Plaintiff's Exh. A). Similarly, on August 24, 2022, Harrison drafted an informal grievance relating to the July 4th and July 18th grievances (untimely response, failure to address the merits, and request for

a grievance log number). ECF No. 30, p. 25 (Plaintiff's Exh. B). This grievance is not stamped as received nor is there any prison response in the bottom section of the form so there is no way of knowing whether this was submitted to the prison. Id. On August 26, 2022, Harrison filed another informal grievance (No. 2205-501-033) complaining that the response he received on August 24, 2022, failed to address his July 4th grievance. ECF No. 23-3, p. 2 (Defendant's Exh. C). Informal grievances are insufficient to count as any step two formal grievance or any step three appeal.

Eventually, on August 29, 2022, Harrison filed an administrative appeal to the FDOC secretary alleging that officials failed to respond to his *July 18th* grievance – "informal grievance (501-2207-0126)." ECF No. 23-5, p. 3 (Defendant's Exh. E). Harrison again complained that religious materials mailed to him were free of charge but are intercepted in exchange for a fee. Id. Harrison, without the means to pay, called the process "extort[ion]." Id. On September 6, 2022, the prison returned Harrison's administrative appeal without action because Harrison stated he "received a response to the incorrect informal grievance." Id., p. 2. In short, to satisfy step three of the exhaustion process for the July 4th grievance, this administrative appeal should have addressed Grievance No. 501-2207-0016 ***not*** No. 501-2207-0126. The same day, the prison also returned Harrison's August 26th

grievance as time barred. ECF No. 23-3, p. 2 (Defendant's Exh. C.)

To fully exhaust the prison grievance procedure, for the July 4th grievance, Harrison was required to file an appeal to the FDOC secretary addressing Grievance No. 501-2207-0016. He did not. To fully exhaust the prison grievance procedure for the July 18th grievance, Harrison should have filed a formal grievance to the warden (step two) specifically relating to his July 18th grievance (No. 501-2207-0126) followed by an appeal to the FDOC secretary. Harrison's August 29th appeal to the secretary skipped step two. Finally, when Harrison's appeal was returned without action, he had the opportunity to refile his grievance utilizing the proper procedure and within the time frame set forth in Fla. Admin. Code 33-103.014. Instead, Harrison initiated this case one month later, on October 6, 2022. ECF No. 1. This is impermissible because Harrison failed to exhaust his administrative remedies.

C. Petition to Initiate Rulemaking (PIRM)

Defendant also argued that for an inmate to fully exhaust his administrative remedies, he must also file a PIRM. Harrison argued he is not challenging the rule but simply wanted his religious materials in a tangible format exempt from the fee; therefore, he was not required to file a PIRM. ECF No. 30, p. 12. Whether or not the filing of a PIRM is a required step in

Florida's administrative exhaustion process is an issue that is currently before the Eleventh Circuit. Sims v. Sec'y, Fla. Dep't of Corr., No. 19-13745 (11th Cir.). Briefing on the appeal in Sims is complete; and oral argument was held on May 14, 2021. Ordinarily, because the Eleventh Circuit's decision in Sims would have a controlling effect, a ruling would be deferred pending the outcome in Sims. However, because Harrison failed to exhaust his prison administrative remedies, the Court does not need to reach the question of whether a PIRM was required to fully exhaust. The Court does not reach the merits of Harrison's underlying RLUIPA claims; rather, the only issue confronted here is whether Harrison followed the proper procedure in filing his claims. He has not exhausted his administrative remedies.

## VI.  Conclusion and Recommendation

It is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 23, be **GRANTED** for failure to exhaust administrative remedies. The complaint against Defendant should be **DISMISSED** and the case **CLOSED**.

IN CHAMBERS at Tallahassee, Florida on July 24, 2023.

s/ Martin A. Fitzpatrick
MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).